## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUSAN LYNN S.,[1]          )
                                   )
           Plaintiff,     )
                                   )     **CIVIL ACTION**
v.                          )
                                   )     **No. 18-2431-JWL**
NANCY A. BERRYHILL,      )
**Acting Commissioner of Social Security,**   )
                                   )
           Defendant.   )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff claims the ALJ erred in weighing the medical opinion of her treating psychologist, Ms. Cowan, LMLP (Licensed Master Level Psychologist),[2] and consequently erred, both in finding that her mental impairments do not meet the requirements of Listing 12.04 and/or Listing 12.06 and in assessing her residual functional capacity (RFC).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

---

[2] Because Ms. Cowan is a psychologist licensed in the state of Kansas, she is an "acceptable medical source," and hers is a "medical opinion" within the meaning of the Act and regulations. 20 C.F.R. §§ 404.1502, 404.1527 (2017).

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues as presented in Plaintiff's Brief. Because the issues presented hinge primarily on the ALJ's evaluation of Ms. Cowan's medical opinion, the court begins its discussion with consideration of that issue. Moreover, the court finds it necessary first to address counsel's loose practices in citation of alleged support for the propositions she asserts in Plaintiff's Brief.

The court agrees with counsel's apparent determination that the 2017 edition of the Code of Federal Regulations generally applies in this case because the ALJ's decision issued on August 29, 2017. See, e.g., Pl. Br. at 24, n.8, 25 nn.13-17. Moreover, the court recognizes that the criteria for evaluating a claimant's allegations of symptoms, for evaluating the opinion evidence, and for evaluating mental disorders has been in flux over the last several years. See, e.g., Soc. Sec. Ruling (SSR) 16-3p, West's Soc. Sec. Reporting Serv. Rulings, 664-78 (Mar. 16, 2016) (Revised and republished at West's

Soc. Sec. Reporting Serv. Rulings, 736-49 (Oct. 25, 2017, applicable Mar. 16, 2016)); 20

C.F.R. §§ 404.1520b ("How we consider evidence"), 404.1520c ("How we consider and

articulate medical opinions and prior administrative medical findings for claims filed on

or after March 27, 2017"), 404.1527 ("Evaluating opinion evidence for claims filed

before March 27, 2017") (2017); 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.00-12.15

(2017) (final rule adopted at 81 Fed. Reg. 66,138 Revised Medical Criteria for Evaluating

Mental Disorders (Effective Jan. 17, 2017)).

      The court notes inconsistencies in counsel's citation to the Code of Federal

Regulations.  (Pl. Br. 2, nn.4,6; 24, n.10; 29, n.25 (citing C.F.R. 2016); 31, n.31 (citing

C.F.R. 2018)).  And in certain instances, although Plaintiff acknowledges that this is a

proceeding under Title II of the Act, she cites to Part 416 of 20 C.F.R relating to Title

XVI.  Id. at 2 nn.4, 6, 7; 24 nn.8-10.  Finally, and most importantly, several of Plaintiff's

citations do not relate to the proposition she asserts, and in several cases the court is

unable to find any support for the proposition asserted.  The court will discuss just a

couple of examples.

      Plaintiff asserts, "A marked impairment in the functional domain of

"concentration, persistence, or pace" can be found when a claimant is unable to sustain

attention or persist at simple tasks without extra supervision or assistance, or in

accordance with quality and accuracy standards, or at a consistent pace without undue

interruptions or distractions."  (Pl. Br. 26) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 2.00(C)(3) (2017)).  Section 2.00(C)(3) of the Listing of Impairments deals with the

diagnosis of vestibular disorder, so the court assumes counsel made a typographical error

and was referring to § 12.00(C)(3) since her argument relates to mental disorders. However, that section of the Listing of Impairments explains the <u>evidence</u> needed to evaluate mental disorders and says nothing about the ability to concentrate, persist, or maintain pace or any of the other paragraph B criteria. The court was unable to identify the proposition asserted by Plaintiff within any of the Mental Disorder Listings.

The Listings define the functional area of concentrate, persist, or maintain pace as referring "to abilities to focus attention on work activities and stay on task at a sustained rate," and they provide examples including "Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00E(3). It defines a marked limitation in any of the paragraph B criteria as meaning "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00F(2)(d). It does not state that the examples quoted above from Plaintiff Social Security Brief demonstrate a marked limitation in the functional area—concentrate, persist, or maintain pace.

Similarly, Plaintiff cites 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.00(C)(2) for the propositions that "'social functioning' relates to the claimant's ability to interact independently, appropriately, effectively, and on a sustained basis with other individuals,

regulate her emotions, control her behavior, and maintain well-being in a work setting," and that a claimant "demonstrates impaired social functioning by avoidance of interpersonal relationships or social isolation." (Pl. Br. 27-28 and nn.21-22). However, "social functioning" is no longer a mental functional area, but the related mental functional area in the current regulations is "interact with others." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00E(2). This area "refers to the abilities to relate to and work with supervisors, co-workers, and the public." Id. Examples of the related abilities are: "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." Id. While the regulations in Listing § 12.00 relate in some vague and general way to the propositions suggested in Plaintiff's Brief, those regulations do not stand for the propositions suggested, and counsel appears to be working fast and loose with the Act and the regulations to support her position.

The court will provide but one more example of this type of troubling citation in Plaintiff's Brief. Plaintiff asserts, "A treating source [opinion] need not be directly supported by all of the evidence, but should not conflict with any substantial evidence." (Pl. Br. 29) (citing "20 C.F.R.§ 404.1527(d)(2). See also Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (quoting Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2))"). The court perceives that Plaintiff's citation

refers to 20 C.F.R. § 404.1527(c)(2) rather than (d)(2) because 20 C.F.R. § 416.927 and

the related Title II regulation, 20 C.F.R. § 404.1527 have changed since it was quoted in

Doyal and cited in Robinson, and the information contained in subparagraph (d) at that

time is now contained in subparagraph (c). More importantly however, and although the

court agrees in general terms with Plaintiff's assertion, neither 20 C.F.R.

§ 404.1527(c)(2), Doyal, nor Robinson, stand for the proposition asserted by Plaintiff.

The portion of Doyal which quoted the regulation at issue here and was quoted by the

court in Robinson does not state that a treating source opinion should not conflict with

any evidence and need not be directly supported by all the evidence, but it explains, "The

treating physician's opinion is given particular weight because of his 'unique perspective

to the medical evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative examinations or brief

hospitalizations.'" Robinson, 366 F.3d at 1084 (quoting Doyal at 762, quoting 20 C.F.R.

416.927(d)(2)). The court recognizes that counsel is obligated to zealously advocate for

her client before the agency and before this court and may argue that the law is or should

be to an effect which supports the outcome she desires. But she is cautioned not to cite

the regulations or case law for propositions for which they do not directly stand without

explaining how in her view they support the argument she makes.

II.     **Listings 12.04 and 12.06 and the ALJ's Evaluation of Ms. Cowan's Opinion**

Plaintiff claims "[t]he ALJ Erred By Failing to Find That [Plaintiff's] Mental

Impairments Met the Requirements of Listings §§ 12.04 and 12.06." (Pl. Br. 24, § I)

(Title, bolding omitted). This is so, in Plaintiff's view, because she has marked

limitation[3] in two of the "paragraph B" criteria of Listings 12.04 and 12.06—

concentrating, persisting, or maintaining pace; and interacting with others. (Pl. Br. 26-

29). Plaintiff argues that she also meets the paragraph C criteria of Listings 12.04 and

12.06. Id. at 28-29.

Plaintiff's argument that she has marked limitation in these two paragraph B

criteria is based on Ms. Cowan's opinions that Plaintiff "had marked deficiencies of

concentration, persistence or pace," id. at 27 (citing R. 901), and "marked difficulties in

maintaining social functioning." Id. at 28 (citing R. 901). Plaintiff seeks to support Ms.

Cowan's opinions by explaining how in her view Ms. Cowan's treatment notes reflect

marked limitations in these functional areas. Id. at 27-28. Plaintiff's argument that her

conditions meets the paragraph C criteria of the Listings is based on Dr. Skirchak's notes

in a Diagnostic Review Form completed at the Wyandot Center for Community Behavior

on March 25, 2015. (R. 524-25).

### A.    Evaluation of Ms. Cowan's Medical Opinion

---

[3]  Plaintiff argues that she has marked "impairment" in these two paragraph B criteria.
(Pl. Br. 26). The court is aware that "impairment" may connote "limitation." However,
at step two of the sequential evaluation process the regulations consider whether a
claimant has a severe mental or physical impairment or combination of impairments. 20
C.F.R. § 404.1520(c) (2017). The Regulations contain a Listing of Impairments in App.
1, Subpart P., to Part 404, which are considered at step three of the process. And, the
Listing of Mental Disorders explains that the five-point rating scale for evaluating the
paragraph B criteria are defined as "No limitation," Mild limitation," Moderate
limitation," "Marked limitation," and "Extreme limitation." 20 C.F.R., Pt. 404, Subpt. P,
App. 1 § 12.00F(1) (2017) (emphases added).
    The court will use the terminology contemplated in the regulations, recognizing that
the ALJ found Plaintiff has severe mental impairments of anxiety disorders and affective
disorders (R. 16), and that he found certain paragraph B limitations resulting from those
mental impairments. (R. 18).

Plaintiff argues that in discounting Ms. Cowan's medical opinion the ALJ "pick[ed] and cho[]se from [her] medical opinion, using only those parts that are favorable to a finding of nondisability." (Pl. Br. 30) (quoting Robinson, 366 F.3d at 1083). She claims it was error for the ALJ to rely on the state agency psychologists who reviewed Plaintiff's medical records because "[t]hey did not have the benefit of the bulk of [Plaintiff]'s medical records, or an understanding of her minimal progress and improvement explained in Ms. Cowan's records. There is an almost two-year gap between the records that the nonexamining sources reviewed and the date of hearing on March 31, 2017." Id. She argues that all of Plaintiff's "psychological medical records were at the ALJ's disposal, however, he chose to arbitrarily ignore them and to focus only on a part of the evidence of record." Id. at 31. She asserts the ALJ failed to provide good reasons for according greater weight to the opinions of nonexamining sources and failed properly to consider the regulatory factors for weighing medical opinions. Id. She argues "Ms. Cowan's notes, observations, and treatment plan support her findings as to [Plaintiff]'s marked deficiencies of concentration, persistence, or pace, and marked difficulties in maintaining social functioning," and her opinions are "supported within Ms. Cowan's records over a two-year period, where she met with [Plaintiff] and was able to best observe her and the overall effects of her severe anxiety." Id. at 31, 32. She argues the ALJ's findings are supported only by "a general, self-serving statement, that the 'treating mental health records generally support moderate mental health limitations' and attempting to hang his hat in favor of 'moderate' limitations by casting aspersion upon an 'old, outdated standard' utilized by Ms. Cowan." Id. (quoting R. 22-23). She

quotes <u>Robinson</u>, 366 F.3d at 1082, for the proposition that "[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (Pl. Br. 32) (brackets in Pl. Brief).

The Commissioner argues that "[t]he ALJ's treatment of the medical opinions was reasonable," that he considered the entire record and accorded great weight to the opinions of the state agency psychologists, noting that they are consistent with the record. (Comm'r Br. 8). She points out that the ALJ accorded little weight to Ms. Cowan's opinions "because they were not consistent with other treatment records showing only moderate limitations; because they were conclusory and unsupported; because they were internally inconsistent with Ms. Cowan's own treatment notes; because the part of the opinion that Plaintiff would have 'great difficulty maintaining a full-time job' was on an issue reserved to the Commissioner; and because Ms. Cowan used an old, outdated standard in determining Plaintiff's mental health limitations," and argues that each reasons is valid in accordance with the regulations. <u>Id.</u> at 8-9 (citing R. 23; and apparently quoting without attribution Ms. Cowan's letter dated Feb. 11, 2017 (R. 944) cited by the ALJ on page 23). She argues that the opinion is inconsistent with Ms. Cowan's treatment notes showing "that Plaintiff's depression was getting better with medication." <u>Id.</u> at 9.

In her Reply Brief, Plaintiff reiterates that "the opinions [of] non-examining physicians are entitled to the least weight in the overall evaluation of disability, particularly when considered with the long-time treatment and opinion of a treating

specialist" such as Ms. Cowan (Reply 1), and that there is an almost two-year gap between the records these non-examining sources reviewed and the hearing." Id. at 2. She argues that Ms. Cowan's "findings are in line with those of Danielle Skirchak, M.D., the psychiatrist at Wyandot Center," and that "The Commissioner's analysis … was not advanced by the ALJ; therefore, it is improper for the Commissioner to provide rationale to support the decision where [it] was not advanced by the ALJ." Id. at 3.

### 1. Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[4] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2) (2017). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently

---

[4]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 404.1502.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and her opinion is generally entitled to "particular weight." Doyal, 331 F.3d at 762. But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson, 366 F.3d at 1084; Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300

(quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id., 350 F.3d at 1300.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

   *2.     The ALJ's Findings*

The ALJ summarized Plaintiff's allegations, the record evidence, and the opinion evidence in his assessment of Plaintiff's RFC. (R. 19- 23). He then explained the weight he accorded to the opinion evidence, including the medical opinions regarding Plaintiff's mental abilities. Id. at 22-23. He accorded "great weight to the opinions of the State [sic] agency psychological consultants [(Dr. Adams and Dr. Cohen)] and lesser weight to the opinion of the State agency medical consultant [(Dr. Kaur)]." Id. at 22. He accorded great weight to the opinion of Dr. Cuevas, who examined Plaintiff in July 2015 at the request of the agency. Id. He accorded little weight to Ms. Cowan's opinion and to the opinion of Dr. Moussa, a medical doctor who treated Plaintiff. Id. at 23. He found no basis to afford the opinion of Plaintiff's husband "more than slight, if any, weight." Id.

He explained his reasons for according great weight to the psychological consultants' opinions and little weight to Ms. Cowan's opinion:

> The undersigned gives great weight to the opinions of the State [sic] agency psychological consultants … . The treating mental health records generally support moderate mental health limitations. The notes from February 2014 showed the claimant continued to feel overwhelmed with day-to-day activities and health. She became easily frustrated and her anxiety increased when she became focused on what she could not do.
>
> ***
>
> The undersigned gives little weight to the opinion of Ms. Cowan. [(1)] She used an old, outdated standard in determining the mental health limitations. Further, [(2)] there was no note, explanation or citation to testing for the disabling marked limitations. They were [(3)] not consistent with the treating records that showed only moderate limitations. The treating notes from February 2017 showed the claimant had an appropriate affect, was kempt, had a depressed mood, and had variable treatment compliance (Exhibit 28F, page 9). Ms. Cowan [(4)] did not offer an explanation or evidence of why the claimant would miss four days of work each month. [(5)] The opinion is internally inconsistent since she has a GAF that

indicates moderate mental health symptoms yet had disabling social functioning and concentration abilities.  Finally, [(6)] the decision as to whether the claimant is disabled is one specifically reserved for the Commissioner.

(R. 22-23) (numbering added).

### 3.    *Analysis*

Plaintiff's argues that a treating source opinion is generally worthy of greater weight than the opinions of nonexamining sources and therefore the ALJ should have given greater weight to Ms. Cowan's opinion than to the state agency psychological consultants' opinions.  But she does little to demonstrate the error in the ALJ's rationale discounting Ms. Cowan's opinion.  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff argues that the ALJ based both his finding that Plaintiff's mental impairments are severe and his mental RFC assessment at least in part on Ms. Cowan's treatment records, but that by discounting her medical opinion he cherry-picked her records and used only the parts that are favorable to finding Plaintiff not disabled.  (Pl.

Br. 30).  However, other than Ms. Cowan's opinion—which the ALJ specifically addressed and discounted—she points to no evidence from Ms. Cowan's records which were ignored by the ALJ.  Moreover, Plaintiff acknowledges that the "medical records were at the ALJ's disposal," but she argues "he chose to arbitrarily ignore them and to focus only on a part of the evidence of record."  (Pl. Br. 31) (citing the ALJ's discussion of the opinion evidence, but not citing specific evidence he ignored).  Thus, she is merely asking the court to reweigh the evidence, find something it believes the ALJ may have ignored, and substitute its judgment for that of the ALJ.  The court may not do so. Bowman, 511 F.3d at 1272; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell, 862 F.2d at 475).

Plaintiff's argument that the state agency psychologists did not have the benefit of the bulk of Plaintiff's medical records because there was "an almost two-year gap between the records" they reviewed and the ALJ hearing on March 31, 2017 fares no better.  (Pl. Br. 30).  Dr. Cohen reviewed the record evidence at the reconsideration level on November 3, 2015.  (R. 780).  That is slightly less than 17 months before the ALJ hearing.  Moreover, the "bulk of" Plaintiff's treatment records from Ms. Cowan through February 7, 2017, including 2 visits in October 2015, were not submitted to the agency until Ms. Cowan's "Mental Impairment Questionnaire (Listings)" was submitted by counsel to the ALJ with a cover letter dated Feb. 13, 2017—about one-and-one-half months before the hearing.  (R. 899-931).  The agency requested treatment records from

the Wyandot Center for Community Behavior on October 12, 2015 (R. 775) and was

informed on October 15, 2015 that there were no records available after April 24, 2015.

Id. at 777.  To the extent counsel felt it was necessary for the agency psychological

consultant to review Ms. Cowan's contemporaneous records, she could have submitted

the October 2015 records before the reconsideration review.  Nonetheless, the fact that

the agency psychological consultants did not review several of Ms. Cowan's treatment

records[5] is irrelevant to the issue of the weight assigned to Ms. Cowan's opinion or to the

opinions of the state agency psychological consultants.

Although an ALJ is not an acceptable medical source qualified to render a medical

opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from

the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the

ALJ's RFC assessment is an administrative, rather than a medical determination."

McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996

WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the

evidence in the record, not only the medical evidence, [it is] well within the province of

the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26,

1999); 20 C.F.R. § 404.1545(a).  Moreover, the final responsibility for determining RFC

rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.  Here, the ALJ

reviewed all the record evidence including Ms. Cowan's treatment records and he

---

[5] At the time of the reconsideration, Ms. Cowan apparently practiced at Soul Care
Counseling and her treatment records from January 23, 2015 through September 16, 2015
were included in the administrative record before Dr. Cohen.  (R. 505-21, 726-59).

accorded weight to all the opinions and assessed RFC based upon his review of the evidence.  That is what is required.  A separate review of all the medical records by an agency psychologist or physician at the hearing level is not required.

Finally, Plaintiff argues that the ALJ attempted "to hang his hat in favor of 'moderate' limitations by casting aspersions upon an 'old, outdated standard' utilized by Ms. Cowan" (Pl. Br. 31-32) and suggests that in doing so the ALJ made speculative inferences from the medical reports and rejected Ms. Cowan's opinion outright without contradictory medical evidence but due to his "own credibility judgments, speculation or lay opinion."  Id. at 32 (quoting Robinson, 366 F.3d at 1082, and McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).  Plaintiff's argument ignores that it is the ALJ's responsibility both to weigh the medical opinions and to assess Plaintiff's RFC.  Here, the ALJ did not speculate.  He discounted Ms. Cowan's medical opinion based on contradictory medical evidence which he explained and cited in his decision.  (R. 23).  While the ALJ discounted the opinion, in part, because Ms. Cowan "used an old, outdated standard in determining the mental health limitations," that was but one of six reasons the ALJ provided to discount the opinion.  Id.  As the ALJ found, Ms. Cowan used an "old, outdated standard" based on the four mental functional areas used by the Commissioner before January 17, 2017.  While that by itself is not fatal to Ms. Cowan's opinion, it is a valid basis, among other reasons to discount the opinion.  The court's review reveals that each of the six reasons given by the ALJ are supported by the record, and Plaintiff makes no serious effort to show error in the ALJ's rationale.

In her Reply Brief, Plaintiff notes that the Commissioner's Brief provided "several reasons, by citing to treatment notes, as to why Ms. Cowan's opinion was not entitled to significant weight in the decision," and argues, "The Commissioner's analysis, however, was not advanced by the ALJ; therefore, it is improper for the Commissioner to provide rationale to support the decision where none was not [sic] advanced by the ALJ." (Reply 3) (citing SEC v. Chenery Corp., 318 U.S. 80, 90-95 (1943)).

This court does not understand Plaintiff's appeal to Chenery Corp. There, the Court "merely h[e]ld that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." 318 U.S. at 95. Plaintiff does not argue that the ALJ's rationale for discounting Ms. Cowan's opinion are not grounds upon which a decision may be sustained, but she argues that in seeking to support the ALJ's decision the Commissioner has provided post hoc rationale not relied upon by the ALJ. The court agrees that a decision cannot be affirmed based on appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). And a reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

However, a reviewing court must determine whether the ALJ's factual findings are supported by substantial evidence in the record. Lax, 489 F.3d at 1084; White, 287 F.3d at 905. The determinative question is whether the Commissioner's argument is improper post-hoc rationalization for the final decision or whether it is pointing to substantial

record evidence in support of that decision.  If the Commissioner is pointing to record evidence supporting the ALJ's rationale, even if that evidence was not specifically mentioned in the final decision, it is proper argument in support of the final decision. However, if the Commissioner is pointing to record evidence (even evidence which was discussed in the decision) and attempting to provide an alternative rationale in support of the ALJ's decision, that alternative rationale is merely post-hoc rationalization which may not be relied upon by the court to affirm the decision.

Here, as quoted above the ALJ provided six reasons to discount Ms. Cowan's opinion.  (R. 23).  Reason number three was that Ms. Cowan's opinions "were not consistent with the treating records."  Id.  The first full paragraph on page 9 of the Commissioner's Brief refers to inconsistencies in Ms. Cowan's treatment notes which were cited by the ALJ.  (R. 907, cited by the ALJ as "Ex. 28F, page 9").  The carryover paragraph on pages 9 and 10 of the Commissioner's Brief cites other evidence from Ms. Cowan's treatment notes which is also inconsistent with her opinion.  The Commissioner is not providing improper post hoc rationalization in support of the decision.  Rather, she is pointing out additional record evidence which supports the rationale used by the ALJ. That is not error.

Plaintiff does not even suggest error in the remaining reasons the ALJ gave.

Having found no error in the ALJ's reasons for discounting Ms. Cowan's opinion, the court also finds no error in the ALJ's determination to accord great weight to the opinions of the state agency psychologists. As the ALJ found, and as discussed above, the mental health records generally support moderate mental health limitations. While it may

have been better for the ALJ to provide further explanation for his finding, once Ms. Cowan's opinion was properly discounted, more was not required.

### B. Whether Listing 12.04 or 12.06 Is Met or Medically Equaled

Now the court turns to the issue of the ALJ's finding that Listings 12.04 and 12.06 are not met or medically equaled.

#### 1. Paragraph B Criteria

Plaintiff's claim that she has marked limitations in the mental functional areas of concentrating, persisting, or maintaining pace; and of interacting with others is based on Ms. Cowan's opinions that Plaintiff has marked deficiencies of concentration, persistence, or pace (Pl. Br. 27) (citing R. 901); and marked difficulties in maintaining social functioning. Id. at 28 (citing R. 901). Beyond these assertions, Plaintiff cites to Ms. Cowan's treatment records allegedly supporting them. Id. at 27-28. However, she does not explain how those records compel a finding of marked limitations. The ALJ considered all the record evidence—including Ms. Cowan's treatment records. (R. 15, 17-18, 23). He properly discounted Ms. Cowan's opinions and found moderate limitations in the mental functional areas of interacting with others; and concentrating, persisting, or maintaining pace. Id. at 18. Plaintiff has shown no error in his consideration.

#### 2. Paragraph C Criteria

Plaintiff argues that she meets the paragraph C criteria of the Listings because "her disorders are "serious and persistent," she has a medically documented history in excess of two years, and there is evidence of ongoing medical treatment and mental health

22

therapy that diminishes the signs and symptoms of [her] mental disorders, and marginal

adjustment has been made despite medical treatment and mental health therapy."  (Pl. Br.

28).  To support this assertion, she argues:

> Dr. Skirchak noted that although [Plaintiff] has been batting "[d]epression
> for 20 years, [it has] worsened over the last 2-3 years…."  (Tr. 524).  She
> also diagnosed [Plaintiff] with Major Depressive Disorder, Recurrent and
> Severe, and with Anxiety Disorder.  (Tr. 524).  Further, Dr. Skirchak noted
> [Plaintiff]'s ongoing battle with these disorders and the many medications
> she has taken to alleviate symptoms: "she has had bad responses, and bad
> side effects, sensitivity to many SSRIs, SNRIs, but has been on a TCA for
> over 10-20 years…."  (Tr. 550).  Throughout [Plaintiff]'s ongoing two-year
> treatment, Ms. Cowan noted some limited episodes of improvement, but
> felt that overall, progress was slow and was not significant.

(Pl. Br. 28-29).

As Plaintiff's Brief suggests, the Commissioner uses "the paragraph C criteria to

evaluate mental disorders that are 'serious and persistent.'"  20 C.F.R. Pt. 404, Subpt. P.,

App. 1 § 12.00G(1).  The Commissioner will "find a mental disorder to be 'serious and

persistent' when there is a medically documented history" that the claimant has had a

mental disorder within that Listing for at least two years, and the evidence shows

Plaintiff's "disorder satisfies both C1 and C2."  Id. § 12.00G(2)(a).

> The criterion in C1 is satisfied when the evidence shows that [a claimant
> relies], on an ongoing basis, upon medical treatment, mental health therapy,
> psychosocial support(s), or a highly structured setting(s), to diminish the
> symptoms and signs of [her] mental disorder.

Id. § 12.00G(2)(b).

> The criterion in C2 is satisfied when the evidence shows that, despite [a
> claimant's] diminished symptoms and signs, [she has] achieved only
> marginal adjustment.  ""Marginal adjustment" means that [her] adaptation
> to the requirements of daily life is fragile; that is, [she has] minimal
> capacity to adapt to changes in [her] environment or to demands that are not

already part of [her] daily life.  We will consider that [she has] achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [her] symptoms and signs and to deterioration in [her] functioning; for example, [she has] become unable to function outside of [her] home or a more restrictive setting, without substantial psychosocial supports (see 12.00D).  Such deterioration may have necessitated a significant change in medication or other treatment.  Similarly, because of the nature of [her] mental disorder, evidence may document episodes of deterioration that have required [her] to be hospitalized or absent from work, making it difficult for [her] to sustain work activity over time.

Id. § 12.00G(2)(c).

Clearly, Plaintiff has shown a medically documented history of her mental disorders for two years.  Moreover, the court assumes without deciding that the C1 criterion is met in this case.  However, the ALJ found that the paragraph C criteria are not met because the evidence does not establish the C2 criterion—"that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life."  (R. 18).

As the ALJ found, Plaintiff has not shown a minimal capacity to adapt to changes in her environment.  As Listing § 12.00G(2)(c) explains, Plaintiff has not shown she has "become unable to function outside of [her] home or a more restrictive setting," or that changes in her environment have "necessitated a significant change in medication or other treatment" such as "episodes of deterioration that have required [her] to be hospitalized or absent from work."  20 C.F.R. Pt. 404, Subpt P, App 1 § 12.00G(2)(c) (emphases added).  This is particularly true in light of the standard for evaluating step three of the sequential evaluation process, which recognizes that "[t]he [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of

severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532-33 (1990) (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Plaintiff has not shown error in the ALJ's evaluation of Ms. Cowan's medical opinions or in his finding that the criteria of Listings 12.04, or 12.06 are not met or medically equaled.

## III.    RFC Assessment

To the extent Plaintiff relies on an alleged failure to assess RFC limitations based on Ms. Cowan's opinion, that argument fails because the court has found the ALJ properly discounted Ms. Cowan's opinion. Plaintiff also argues that the ALJ erred in finding that she can "understand, remember, and carry out intermediate level work instructions and tasks at a Specific Vocational Preparation (SVP) 4 level." (R. 19) (finding no. 5) (bold omitted); <u>see also</u> (Pl. Br. 34). She quotes the <u>Dictionary of Occupational Titles</u> (DOT) explanation of reasoning development at SVP 4 which "requires a claimant to '[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited

standardization exists' and to '[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.'" (Pl. Br. 34). She argues the medical evidence and the ALJ's finding of moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace preclude finding she can understand, remember, and carry out work instructions and tasks at SVP 4.

She argues that the physical RFC assessed by the ALJ is also contrary to the record medical evidence. (Pl. Br. 34-35). Specifically, she argues that although the ALJ relied on Dr. Cuevas's opinion to asses a physical RFC, Dr. Cuevas did not "comment as to [Plaintiff]'s ability to stoop, kneel, crouch or crawl, or to the remaining criteria of the ALJ's residual functional capacity." (Pl. Br. 35). Thereby Plaintiff implies that RFC limitations must be based on a particular medical opinion. She then cites numerous treatment records in the record evidence which she apparently believes demonstrate greater physical limitations than the ALJ assessed and points out the vocational expert testified that if an individual "were unable to stoop, kneel, or crouch, there would be no work available," id. (quoting R. 56-57), and if an individual "were 'off task' and unable 'to fully complete tasks for 15 percent of th[e] day' that 'employment would not be possible.'" Id. at 36 (quoting R. 58).

The Commissioner argues that the ALJ adequately accounted for both Plaintiff's mental impairments and her physical impairments in the RFC he assessed. As to the mental impairments, she argues that the ALJ found an SVP 3 job without significant interaction with people of which Plaintiff is capable and that any error is thereby rendered harmless. (Comm'r Br. 13-14). She argues that the ALJ assessed an "extremely

restrictive RFC limiting [Plaintiff] to sedentary work with additional postural and environmental limitations," and Plaintiff does not explain how that RFC does not account for her physical impairments.  Id. at 14.  She argues that Plaintiff merely asks the court to reweigh the evidence.  Id. at 15.

Plaintiff's argument that her mental impairments, including the ALJ's finding of moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace preclude finding she can understand, remember, and carry out work instructions and tasks at SVP 4 is without merit.  She has not met her burden to demonstrate how the limitations assessed preclude SVP 4 work instructions and tasks. She has not demonstrated how her mental limitations preclude her from meeting the requirements of SVP 4 work—applying "principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists," and interpreting "a variety of instructions furnished in written, oral, diagrammatic, or schedule form."  DOT, App'x C, available online at, https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM, (last visited, June 13, 2019) (emphases added).  Plaintiff's long string cite to medical records for the proposition that she

> cannot manage her own day-to-day activities, experiences mental fog, has a hard time concentrating, is easily distracted, has extreme difficulty with handling change, becomes easily frustrated with multiple stressors, cannot multi-task, struggles with memory, becomes overwhelmed easily, being around people increases her anxiety, she isolates, and has suicidal ideation. (Tr. 506, 512-14, 516, 520, 731-32, 734-36, 738, 740, 744, 748, 750, 752-53, 758, 903, 908, 916, 919, 921-22, 924-25, 929, 931, 934-35, 937, 939, 941.)

(Pl. Br. 33) is simply another implicit request for the court to substitute its judgment for that of the ALJ and to find greater limitations.  As noted above, the court may not do so. Moreover, the court has reviewed the medical record, and finds that it supports the decision at issue.  The fact that there is evidence which might support another decision highlights the fact that the evidence in Social Security disability cases is often equivocal and the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo, 383 U.S. at 620.  Plaintiff's long string cite regarding her physical abilities (Pl. Br. 35) is to the same effect and no more compelling.  The fact that Plaintiff has impairments and symptom resulting from them, is not determinative of disability. What is determinative is the functional limitations resulting from her conditions, and she has not demonstrated that the evidence compels a finding of greater limitations than those assessed by the ALJ.

The fact that the ALJ accorded great weight to Dr. Cuevas's opinion and that Dr. Cuevas did not opine regarding all the functional limitations represented in the RFC assessed by the ALJ is simply irrelevant to the decision at issue.  As noted above, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard, 379 F.3d at 949.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949); Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in

28

an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). The ALJ in this case met that standard, and more is not required. There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Plaintiff's appeal to the testimony of the vocational expert is no more compelling. The limitations to which Plaintiff appeals—inability to stoop, kneel, or crouch; and being off task and unable to complete tasks fifteen percent of a workday, are not limitations assessed by the ALJ, and Plaintiff has not demonstrated that such limitations are compelled by the record evidence. Therefore, she has shown no error. The ALJ need only assess limitations which he finds supported by substantial evidence in the record. Davis v. Apfel, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999). This is a necessary corollary to the rule that "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner]'s decision.'" Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990))).

Plaintiff has shown no error in the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 13, 2019, at Kansas City, Kansas.

s:/  John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**